Emily E. Howe, State Bar No. 293964
LAW OFFICES OF EMILY E. HOWE
405 Via del Norte, Ste B
La Jolla CA 92037
Telephone: (619) 800-6605
Email: emh@howelaws.com

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M. on behalf of himself and others similarly situated,<br><br>    Plaintiff-Plaintiff(s),<br><br>    vs.<br><br>U.S. CUSTOMS AND IMMIGRATION ENFORCEMENT; EXECUTIVE OFFICE OF IMMIGRATION REVIEW CORE CIVIC; CHRISTOPHER LAROSE, warden of Otay Mesa Detention Center; PAMELA BONDI, Attorney General of the United States, in her official capacity, KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY, TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; JASON AGUILAR, Chief Counsel for Immigration and Customs Enforcement San Diego, SIDNEY AKI, Director of Field Operations, San Diego Field Office U.S. Customs and Border Protection, GREGORY J. ARCHAMBEAULT, Director of U.S. Immigration and Custom Enforcement and Removal Operations (ERO) San Diego,<br><br>    Respondent-Defendant(s). | Case No.: 25CV1412 JO AHG<br><br>**PLAINTIFF-PETITIONER'S REPLY BRIEF IN SUPPORT OF A PRELIMINARY INJUNCTION**<br><br>Hearing Date: July 2, 2025<br>Time: 9:30 a.m.<br>Courtroom: 4C<br>Judge: Hon. Jinsook Ohta |

Plaintiff-Petitioner A.M. ("Plaintiff") respectfully submits this reply brief.

Defendants-Respondents' ("Defendants") filings, including the continued limited opposition (ECF No. 64) and the Motion to Vacate (57-5) disregard the serious and irreparable harm that Plaintiff endured, and faces, both physically, mentally, and legally. Plaintiff was subjected to life-threatening medical neglect, procedural interference, and ongoing intimidation—all resulting from Defendants' removal of Plaintiff from 8 U.S.C. 1229a, INA §240 proceedings with harsh disregard of statutory, constitutional, and asylum protections. *See, e.g.* Amended Complaint ("Compl."), ECF No. 56; Declaration of A.M., ECF No. 64-1.

Plaintiff incorporates by reference all previous filings, including motions, declarations, and exhibits, as though fully set forth herein.[1] Defendant's own memos, publications, and records, including June 13 Notice and June 20 Status (ECF Nos. 39, 39-1, 53, 53-1) show the sheer gravity, urgency, and the need for an injunction to protect Plaintiff, his witnesses, and the public from irreparable harm.

## I.     Argument

Plaintiff satisfies all *Winter* requirements. *See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20; Nken 556 U.S. at 426.* In the instant case, half a dozen masked men whisked Plaintiff away at the courtroom door of his lawful hearing INA §240 hearing (*See* e.g., A.M. Decl. ¶ 10, ECF. 64-1; *See* Exhibit I, ECF. 42, 64-2 at 6-14.) and agents remain at the courtrooms, including those in intimidating and threatening full ski masks or balaclavas. *See,* e.g. *Id.* Declarations of Legal Observers, Exhibits XXVIII-XXXII, ECF 42; 62-2). Absent injunctive relief, Plaintiff faces irreparable harm including loss of rights, medical neglect, and the risk of deportation to a country where he faces persecution, torture, and death.

---

[1] Plaintiff hereby incorporate by reference all arguments contained within Plaintiffs' Application for Temporary Restraining Order, Mot. for a Preliminary Injunction, Plaintiff's Opp. to Def'ts *Ex Parte* Motion to Vacate, (ECF. No. 62), Amend. Compl. (ECF No. 56), Notice of Declaration by A.M. (44), Mot. for a Temporary Restraining Order (ECF No. 41), Notice and Mot. by A.M. (ECF No. 40), and all filings, exhibits, verbal or written arguments presented in the case.

Plaintiff contends past and on-going irreparable harm alleging the detention, the arrest, the coerced signings, the lack of access to counsel and the courts, the liberty deprivation, the potential of repetition are in violation of the First, Fourth and Fifth Amendments, and public's rights under the Sixth-Fourteenth, 8 U.S.C.§1357, INA §240, 8 U.S.C. § 1158, and statutory, constitutional, and international protections.

The Due Process Clause protects against governmental harm to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Further, under 8 U.S.C. § 1357(a)(2), immigration officers may arrest a person without a bench warrant *only if*: (1) reason to believe the person is in the U.S. in violation of immigration law, and (2) The person is likely to escape before a warrant can be obtained. *Id.* Here, neither probable cause nor exigency applied.

The government has not provided any facts of either criteria: There was no order of removal; there was no flight risk. *See* A.M. Decl. ¶ 7-9. Defendants have not provided legal authority or citations for the harm caused by whisking an individual from INA§240 proceedings into INA §235(b) and ineligible for bond under §236(a). (*See* Defendants' Mot. to Vacate, ECF No. 57, at 2:20-22).

This is not a border case. An individual does not become an "applicant for admission" under 8 U.S.C. § 1182(a)(7)(A)(i)(I) by merely being present. *See Torres v. Barr,* 976 F.3d 918 (9th Cir. 2020). Plaintiff entered and is within the interior of the United States. Defendants expressly admit Plaintiff is not and has not been an 'arriving alien', nor has he sought admissibility. *See Id.;* Def's Suppl. Notice, Ex 11, ECF No.46-1 at 2. Defendants placed him into the protections of the §240 proceedings before an immigration court who scheduled an asylum trial, and released him. *See* Amend. Complaint ¶14; Def.'s *Table of Exhibits, ECF 39-1 at 6.* Yet, he was detained at the very INA §240 proceedings where Defendants' contend: **"Plaintiff is not and cannot be removed until he is subject to a final order of removal."** (emphasis added). *See* ECF No. 64 at 4:13-14.

I. **Irreparable Harm**

Under the second *Winter* factor, the court should find a likelihood of irreparable harm. *See Winter v. NRDC*, 555 U.S. 7, 22 (2008). "Serious questions going to the merits and a balance of hardships that tips sharply in the plaintiff's favor can support issuance of a preliminary injunction, if the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

The Ninth Circuit found: "Even a significant risk that the alien will be removed before the petition is granted, and that he will be physically harmed during that time, is sufficient to satisfy the irreparable injury requirement." *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) (*per curiam*.)

Here, if plaintiff is removed, he will lose his ability to challenge the removal and due process violations that he suffered. No such right exists to pursue a challenge after removal from the United States. *See Doe v. McAleenan,* 415 F. Supp. 3d 971. 979 (S.D. Cal 2019, *modified,* 2019 WL 6605833 (S.D. Cal. Dec. 3, 2019)(noting "non-reviewable erroneous decision" of removal amounts to irreparable harm.); *see also Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.,* 739 F. 2d 466, 472 (9th Cir. 1984)("An alleged constitutional infringement will often alone constitute irreparable harm.")

### A. Plaintiff Has Already Experienced Irreparable Harm

Defendants' claim that Plaintiff's harm is speculative is unfounded. Plaintiff was removed from the original §240 proceedings and detained despite a pending asylum claim with the government's full awareness that Defendants' officers were waiting to detain him upon leaving the court. Plaintiff still is eligible for an active appeal. *See* ECF. No. 39-1 at 18, 28. During custody, ICE ignored Plaintiff's medical needs, deprived him of procedural rights, and coordinated his arrest in a manner that foreclosed access to the court system. A.M. Decl. ¶¶ 8-35.

Such harm is irreparable by definition. *See Melendres v. Arpaio*, 695 F.3d

990, 1002 (9th Cir. 2012) ("[W]hen an alleged deprivation of a constitutional right is involved, courts have held no further showing of injury is necessary.") Further, Plaintiff was removed from §240 proceedings—where he had procedural protections and the ability to present evidence—and thrust into expedited removal without counsel or a meaningful opportunity to be heard under a completely different legal regime. Defendant's alleged unlawful actions are "capable of repetition". The Supreme Court has long held that "a defendant cannot automatically moot a case simply by simply contending it's unlawful conduct has stopped once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). This constitutes a due process violation that cannot be remedied by money damages or after-the-fact relief. *See Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (finding irreparable harm where Plaintiff faced removal without adjudication.) Similarly, First Amendment injuries are irreparable. *See*, e.g., Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 19 (2020).

### B. A new INA §240 case is not a "restoration" of rights

The Government's Claim that it is "Restoring" §240 Proceedings does not cure the Constitutional Violation or Moot the Need for Injunctive Relief. Defendants claim that Petitioner will be returned to proceedings from afresh under INA § 240; C.F.R. § 1003.14(a); C.F.R. § 1003.14(a). *See* Redondo Decl. at ¶ 4; ECF No. 65. Though construed as a tacit admission that their earlier actions were procedurally and constitutionally defective, it does not cure the due process violations already committed, nor does it eliminate the need for injunctive relief.

Plaintiff was in those very proceedings scheduled to present his case at an individual merits hearing. *See* Notice to Appear, ECF No. 39-1, 39-2. Defendant's own notice and declarations to the court attests A.M. was in INA § 240 proceedings since January 30, 2024. *See* Redondo Decl. ¶ 9-10. ECF No 39. Just as Defendants' attest, within his removal proceedings under §1229a, INA §240, Petitioner was applying for relief from removal with an immigration judge,

4
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF A PRELIMINARY INJUNCTION

including asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture. *See Id.* at ¶ 3. He filed his lawful claim to asylum I-589, Application for Asylum and supplemental evidence in multiple filings. *See* Amend Compl. ¶ 15-16.

Contrary to Defendants' incorrect assertions (*see* ECF No 57, at 3:22), Plaintiff is now far from the same position he was in on June 3, 2025. *See , e.g.* A.M. Decl; ¶¶ 9-35; Defendant's Supplemental Notice, ECF No. 46-2 at 2:2 (e.g. still listed as (2) native of Morocco and a citizen of Morocco; denoting an interrogation and a detention-based hearing all without counsel: "Ordered to appear before an immigration judge at 7488 Calzada de la Fuente, on 6/16/2025)(emphasis added).

Prior to the events that gave rise to his original petition, Petitioner was in §240 proceedings pursuing an asylum claim before an immigration judge and released on an order of recognizance, i.e., not in DHS custody. *See* ECF No. 53-1. Plaintiff was and still is in §240 proceedings under 8 C.F.R§1003, and yet the government insists Plaintiff: (i) **start from square one** of asylum proceedings, (ii) wear an **ankle GPS tracker** (*See* A.M. Decl., ECF No. 64-1), (iii) was **detained by masked men** at those very courtroom hearings (*Id*. ¶10; 64-2; Amend. Compl. ¶ 47), (iv) **repeatedly told to sign away his rights without Counsel** (*Id*. ¶13; Defendant's Table of Exhibits, Ex. 7, ECF No. 39-1, at 23:32)(Notice and Order of Expedited Removal, Determination of Inadmissibility, dated: June 3, 2025 "Refused to sign")(A.M. Decl. ¶ 24; ECF No. 53-1 at 2)("You must surrender from removal from the United States if so ordered"; "You must report in writing, person to Duty officer at San Diego Filed office on June 26, 2025 at 10 a.m. as directed"), (v) he was being **processed for immediate return** to the country of persecution ( *Id.* ¶13), (vi) **shackled at the stomach, hands, and feet** (*Id*. ¶ 5), (vii) court attendees were **told to sleep on the floor** ( *Id*. ¶ 23), (viii) was **interrogated during a diabetic emergency** (*Id*. ¶ 28), (ix) was **prevented from connecting with his counsel** (*Id*. ¶ 25), (x) met detainees who had no idea what

5
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF A PRELIMINARY INJUNCTION

happened to their case (Id. ¶ 21),, (xi) saw detainees who were **transferred out of the district** (*Id*. ¶ 22), (xii) was **told to fingerprint documents to sign away** his rights without counsel (*Id*. ¶ 34), (xiii) is required to appear at the Edward J. Schwartz building **for mandatory check-ins** (*Id*.), (xiv) incurred **immense time, hours, costs** (*Id*. ¶ 32), (xv) **cannot work** where he was eligible to file for his Employment Authorization Document, (xvi) **Defendants' government agents are showing up at his house without a warrant**, *See* Declaration of A.M.D., ¶ 10 ("A.M.D Decl.")("…all very confusing and scary"), and no promises the same reckless disregard for his humanity and due process rights will not reoccur. *See,* e.g. Amend. Compl; Decls. of Legal Observers XXVIII-XXXII. (ECF No. 62-2).

Just as Defendants' assert, "Re-detention of Petition cannot occur absent changed circumstances including a final, executable order of removal" (ECF No. 57 at 4:1-2) or "Petitioner cannot and will transfer him out of the Southern District of California during the pendency of his 240" (*see ECF No. 57 at 15-17;* Opposition ECF No. 65, noting 8 U.S.C. § 1229a(a)(1), (3); 8 U.S.C. § 1231(a)(1)(A), *Redondo* Decl. at ¶ 6, Plaintiff never should have been detained from his *still* pending §240 proceedings. He was handcuffed at the very court door by masked agents, where he was asserting his lawful rights.  A.M. Decl. ¶ 10-11. He was not under a final order of removal "unless and until such order is entered by an immigration judge after full consideration of any claims for relief or protection from removal (e.g., asylum under 8 U.S.C. § 1158 and 8 C.F.R. Part 1208, 8 C.F.R1240.11, Withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under Convention Against Torture, 8 U.S.C. § 1229a(a)(1), (3)).

Accordingly, Petitioner been harmed, and continues to be irreparably harmed, as there are imminent risks and harm to his witnesses and members of the public.

**C. Absent intervention, Plaintiff Experiences On-going Irreparable Harm**

Plaintiff has not been restored to the pre-detention status quo. Defendants have not reinstatedPlaintiff's original case or honoring the procedural status Petitioner

had (e.g., pending claim, evidentiary history, or work ability). Plaintiff faces immediate, irreparable harm absent injunctive relief including but not limited to:

1. **Life-Threatening Medical Condition Ignored During Custody, Detention, & Interrogations**: Plaintiff suffers from diabetes in part from past trauma. *See* A.M. Decl. ¶ 15. While in DHS custody, he reports being interrogated without counsel during a diabetic emergency, with coma-level blood sugar and without access to his medication. Id. ¶ 15, 18. The physical toll and risk of death from these events cannot be remedied through monetary damages. *See also* Exhibits XXVIII-XXXIV: Medical Visit).

2. **Loss of Work Authorization and Restarting §240 triggers one-year asylum clock issues**. New proceedings do not restore the procedural position, and do not address the prejudice through loss of continuity, asylum clock, or evidentiary continuity that was lost. *See*, e.g., 8 U.S.C.§1158, 8 C.F.R.1208.4. Nor does it prevent DHS from again terminating proceedings and initiating removal. If the clock restarts, Plaintiff is no longer eligible for work authorization. *See* 8.C.F.R §274a12(c)(3). This economic harm compounds the psychological, physical, and legal damage he has experienced. The cascading financial hardship cannot be undone.

3. **Loss of Procedural Protections and Due Process**: Defendants' conduct has moved so quickly and Plaintiff fears the court's loss of jurisdiction if arbitrarily sent out of the country. *See* ECF. 1. Plaintiff was removed from INA §240 proceedings and placed into expedited removal despite being a long-standing asylum applicant. *See* Compl ¶ 4, 16. He met detainees who have been locked away without knowledge of their cases. *See* A.M. Decl. ¶ 21, ECF 64-1. This jurisdictional whiplash and diversion strips him of basic due process and the ability to present his claim fully constitute harm.

4. **Access to Counsel, Witness Unavailability & Costs of Restarting from Zero**: Witnesses have indicated their intent to appear and testify. *See* Compl.

Due to Defendants' procedural maneuvering, witnesses may no longer be able appear; court attendees and witnesses have stopped appearing under the current schema of masked men hovering at the courtroom doorways. *See* e.g., A.M.S. Decl.[2] ¶ 7. In addition, the Plaintiff must now duplicate time, energy, expense, including thousands of dollars in translations and costs. *See* Decl. of A.M. ¶ 32. With the petition alone, there's been countless hours, including holidays, evenings, weekend. *See* ECF Nos. 1-62. The time, stress, costs are all unnecessary had he been able to proceed in regular proceedings

5. **Severe Mental Distress from Ongoing Threats & Surveillance Evoke Memories of Past Torture**: Unknown DHS agents have reportedly shown up at Plaintiff's home, tracked his movements, and engaged in surveillance, creating a profound sense of fear, sense of vulnerability, and harm. *See* A.M.S. Decl. ¶ 3, 5, 10. The unannounced government visits and masked agents is reminiscent of the persecution and trauma he suffered at the hands of Moroccan authorities. A.M. Decl. at 33. This re-traumatization causes severe psychological harm and exacerbating medical risk. See A.M.S. Decl. ¶ 5. Plaintiff or witnesses appearing downtown at the Edward J. Schwartz Buildings is terrifying due to masked officers. A.MS. Decl. ¶ 7.

6. **Continued Arbitrary Courthouse arrests and Chilling Effect:** Here, the masked civil arrests still occur and interfere with court processes and chilling[3] access to Plaintiff, his witnesses, and the public.  Witnesses note Defendants' liken themselves to the 'Gestapo' (*See* Declaration. of Ruby M. ¶ 8:21-22, ECF No. 62-2 at 211-213) This unfettered behavior still continues even to allies of the U.S. military (*See* Declaration of Brian McGoldrick ¶

---

[2] A.M.S. Declaration is included to incorporate recent events of Defendants' looking for Plaintiff, and the chilling effect on witnesses.

[3] To the extent useful, Plaintiff contemporaneously moves to submit the unredacted copy of Petitioner's recent medical record and Declarants' signatures under seal.

8

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF A PRELIMINARY INJUNCTION

2:7-15)(the arrests are "terrifying for everyone that must walk the hall".)(*See* Exhs. XXIV-XXXI; ECF No. 64-2.)

7. **Risk of Removal and Refoulement**: Without court intervention, Plaintiff faces abrupt and arbitrary removal, harm that cannot be undone. Defendants erroneously list Plaintiff's country of removal as Morocco. *See* Defendants Notice, ECF No. 39 at 3:14. The risk of harm or torture upon return is high, and his medical fragility and the past threats make return potentially lethal. *See* Decls. Fadel; Barka; Khaya, ECF No. 64-2.

Accordingly, such injuries cannot be remedied and meet the *Winter* standard.

### D. Defendants Face No Cognizable Harm From An Injunction

The court found Defendants have not shown any harm to them. *See* Minute Order, ECF No. 63. Defendants purport they are already going to do what the injunction says: Defendants released Plaintiff stating no plans to remove him. ECF 64. Defendants have known about these individuals for months if not years. *See* ECF 39-1. Arguably, it's in Defendants' financial benefit to return to a pre-detained status quo as it costs time, expenses, and resources, to have whisked Plaintiff away from court, than to let him proceed with his merits hearing. The public has a strong interest in protecting the safeguards of the Constitution, upholding the rule of law, and avoiding irreparable harm to Plaintiff, his witnesses, and members of the public. An injunction merely ensures that constitutional and statutory protections are not violated while proceedings continue lawfully.

## II. The Public Interest and Equities Strongly Favor Injunctive Relief and the Court's Continued Jurisdiction

When the Government is a party, the third and fourth *Winter* factors—the balance of the equities (hardships) and the public interest—merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken*, 556 U.S. at 435). It would not be "'in the public's interest to allow the [Government] . . . to violate the requirements of federal law, especially when there are no adequate

remedies available.'" *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)(finding fear of being subject to detention can constitute irreparable harm).

Here, there's no harm in upholding the law and protecting one's constitutional rights. Without court intervention, nothing prevents Defendants from again terminating proceedings, or reassigning Plaintiff for removal before the adjudication of his claims. Plaintiff seeks an injunction because: (i) the voluntary cessation of an arbitrary detention by the government does not moot an otherwise justiciable constitutional claim; (ii) witnesses attest the violations and arbitrary arrests continue to date; (iii) when individuals with credible fear of persecution are removed without an opportunity to be heard, the public harm is irreversible, (iv) DHS has made no enforceable commitment to stop warrantless arrests, continue §240 proceedings, or avoid similar bait and switch ambush tactics in the future.

Plaintiff seeks protections to ensure access to the courts, due process, deterrence of arbitrary arrest, and compliance with statutory, constitutional, and non-refoulement obligations. If such practices are unchecked, other asylum seekers and court attendees may be similarly coerced, silenced, or denied access to fair process—further damaging Plaintiff and the public trust in the legal system. Just as Defendants cannot show that secured protections, they do not show that they somehow are harmed by returning Plaintiff to pre-detention status quo.

## IV. Conclusion

A court order for a preliminary injunction is necessary to prevent irreparable harm to the Plaintiff and to safeguard the broader public interest.

Respectfully submitted,

DATED: June 30, 2025                LAW OFFICES OF EMILY E. HOWE

*By /s/* Emily Howe
Emily Howe
Attorney for Plaintiffs
emh@howelaws.com

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF A PRELIMINARY INJUNCTION